Press Publishing Company, Appellant, v. Pittsburgh.
    Charlton, Appellant, v. Pittsburgh.    Pittsburgh Com-
    mercial Gazette, Appellant, v. Pittsburgh.

*Municipalities—Municipal advertisement—Newspapers—Acts of March 7,
1901, art. 15, P. L. 20, and June 20, 1901, P. L. 586—Cities of the second
class.*

No contract exists with a city of the second class for official advertising,
where none has been signed by the recorder and countersigned by the
controller notwithstanding such contract has been advertised for, let and
awarded under the Act of March 7, 1901, art. 15, P. L. 20, as amended by
the Act of June 20, 1901, P. L. 586, the award accepted by the successful
bidder, the contract reduced to writing by the city, executed by the suc-
cessful bidder, delivered by him to the city and received by the city, and
the recorder's signature only prevented by his sudden death.

Powers of the recorder in regard to contracts for official advertising
discussed by SHAFER, J.

Argued Nov. 6, 1903. Appeals, No. 162, 163 and 164, Oct. T., 1903, by plaintiffs, from decree of C. P. No. 2, Allegheny Co., July T., 1903, Nos. 116, 87 and 91, dismissing bills in equity in cases of Press Publishing Company v. Pittsburgh, Charlton v. Pittsburgh, and Pittsburgh Commercial Gazette v. Pittsburgh. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT and POTTER, JJ. Affirmed.

Bills in equity for injunctions.

In the Charlton case, SHAFER, J., filed the following opinion:

With this case were tried the cases of the Pittsburgh Commercial Gazette against the same defendants, No. 91, July term, 1903; the Press Publishing Company against the same defendants, No. 116, July term, 1903; and The German Catholic Press Company against the same defendants, No. 122, July term, 1903.

These four bills were heard together and may be considered together. Each is for an injunction restraining the defendants from letting contracts for official advertising for the city of Pittsburgh before March 13, 1906, and to declare the validity of an alleged contract made with the city by each of the three plaintiffs, who are newspaper publishers, the bill of Samuel H. Charlton being a taxpayers' bill for the same purpose.

1. Samuel H. Charlton, plaintiff in one of the bills, is a citizen and taxpayer of the city of Pittsburgh. The other three plaintiffs are each publishers of newspapers in the city of Pittsburgh.

2. On March 2, 1903, J. O. Brown, who was then the city recorder of said city, advertised for proposals for the publication of all official advertising of the city of Pittsburgh, the cost of which is payable out of the municipal treasury, to include all ordinances of council, proclamations of the city recorder, official reports of the city officers, notices in regard to streets, sewers, viewers' reports, and proposals for public works and supplies. March 13, 1903, at 10 o'clock A. M. sealed proposals were received from certain newspapers published in the city of Pittsburgh, accompanied by proper bonds, as required by the advertisement. The bids were

thereupon publicly opened by the city recorder in the common council chamber and read, and the recorder thereupon declared that he awarded the contracts for the publication of official advertising for three years from April 2, 1903, to the Pittsburgh Press, the Pittsburgh Commercial Gazette, the Post Printing and Publishing Company, the Pittsburgh Leader and the Pittsburgh Beobachter.

The recorder thereupon directed his clerk to draw up written contracts to be signed by the respective newspapers, except the Beobachter, and by himself, which was accordingly done by his clerk, and on the 14th day of March the contracts were signed by all of the newspapers named except the Beobachter. They were then taken by the recorder's clerk to his residence to be signed by him, but he was too ill to do so and said he would sign them later, but died the next day without signing them.

4. After the bids were open and the recorder had publicly awarded them as above stated, it was discovered by the recorder that the bid on behalf of the Pittsburgh Beobachter was irregular, in that the bond and the bid were not in the same name, and the bid did not designate distinctly the standard by which the amount of advertising was to be measured. The recorder thereupon directed his clerk not to make out any writing to be signed by the Beobachter, and declared that he would not accept the bid of that newspaper.

5. On April 11, 1903, William B. Hays, city recorder, who succeeded J. O. Brown in that office, advertised for proposals for the publication of official advertising for the city of Pittsburgh, to be opened on April 21, 1903, to be let to three newspapers.

6. It would not be possible in an action at law to compute or estimate the damages which would arise to a newspsper from the breach of a contract for the insertion of official advertising not actually published by the newspaper, by reason of the numerous elements which enter into the cost of publishing advertisements of uncertain length at uncertain intervals.

If the recorder, J. O. Brown, had a general power to contract for the city as an agent of a private corporation might contract for it, there can be no doubt that a valid contract was created by the advertisement, proposal and acceptance above

stated. The Act of March 7, 1901, article 15, P. L. 20, as amended by the Act of June 20, 1901, P. L. 586, is the law governing the making of contracts for cities of the second class. This article provides that "all contracts relating to city affairs shall be let to the lowest responsible bidder, after reasonable notice," and further, that "all contracts shall be in writing signed and executed in the name of the city by the city recorder and the head of the proper department," and the amended act provides that "no contract shall be let until councils have passed an ordinance providing for the letting of the same by the city recorder and heads of proper departments." After making these and other like provisions in regard to the making of contracts with the city, it is further provided that "at the expiration of the present contract and every three years thereafter, the city recorder of each of the cities of the second class shall contract for a term of three years with not less than three nor more than five daily newspapers . . . . for the publication of all official advertising."

The sole question in this case, therefore, appears to be whether the power thus conferred upon the recorder to con_ tract with these papers for advertising is one which may be exercised by him without any reference to the provisions above stated, and amounts to an authority to him to contract for advertising in any manner and upon any terms he may think fit, without advertising, without writing, without countersigning by the Controller, or any of the other provisions which in their nature are applicable to the contract for advertising, or whether on the other hand the act does not mean that the recorder is authorized to contract under the preceding provisions of the section in regard to city contracts, so far as the same can be applied to the case.

It is quite evident that the intention of the legislature was to authorize the recorder to make such contracts without the intervention of the head of any department, as the contracts are expressly made by the act itself to apply to all departments of the city government, and the provision that contracts are to be signed by the head of the proper department can, therefore, have no application to a contract for advertising. In like manner as the legislature has positively directed the recorder to make contracts for advertising, it is not to be sup-

posed that the provision requiring an ordinance of councils to be passed providing for the letting of the contract applies to the case of contracts for advertising. Counsel for plaintiffs have argued with great force that as these provisions of the first part of the section are inapplicable to the contract in question, it must be inferred that no part of the provisions above stated are applicable to the contracts for advertising, and that the intention of the act is to give the recorder complete control of the matter without any restriction. We are not convinced, however, that the legislature intended in this respect to depart from the rules which have been in force under the various charters of large municipalities for a long time, and to allow the recorder without any advertising to make any bargain he pleased for official advertising; but that the general provision of the act with regard to public contracts must be applied to the contracts in question so far as in their nature they are applicable. The only parts of the general provision as to the making of contracts which are not applicable to the present case are that there is no head of the proper department to sign a contract with the recorder, for the reason above stated, and that the provision as to the passage of an ordinance cannot be supposed to apply to the present case for the reason that the act expressly directs the making of the contract. All the other provisions as to advertisement, letting to the lowest bidder, public award, writing and signature by the city recorder and countersigning by the controller, are as applicable to this as to any other municipal contract, and we are of opinion that they are to be applied to this contract. If we are correct in this, it follows that no contract was made by Recorder Brown with the plaintiff newspapers, as the contract was not put in writing and signed by him or countersigned by the controller. McManus v. Philadelphia, 201 Pa. 619, and the cases therein cited.

It is also argued that the provision in question does not contemplate a previous advertisement, because at the time of the letting of the contracts there are no official papers in which to do the advertising, and the amount being over $250, advertising would be required, and that thus it would be impossible to begin. The answer to this suggestion is that the act itself contemplates the existence of a contract for advertising extend-

ing up to the very date of the letting of the new contract, and provides that "at the expiration of the present contract" the city recorder shall contract for advertising.

There is no difficulty, therefore, in his advertising for proposals as other city contracts are advertised for, up to the very date of the expiration of the existing contract, which is the time when the new contract is to be awarded.

We are of opinion, therefore, that the plaintiffs in these several cases are not entitled to any relief, and the bills are dismissed at the costs of plaintiff.

*Error assigned* among others was decree dismissing the bill.

*Clarence Burleigh* and *Henry O. Evans*, with them *James C. Gray*, for appellants.—The law does not require that such contracts be signed by the city recorder or anyone representing the city of Pittsburgh; the awarding of these contracts and the acceptance of such awarding constitute valid legal binding contracts.

After these contracts had been publicly let and awarded and also accepted by the different newspapers, they became then legal and binding contracts between the city and the said newspapers. The acceptance of the bids, the award of the contracts and the acceptance of the award of the contracts by the newspapers fixed the rights of all parties; Campbell v. Philadelphia, 10 W. N. C. 221.

*W. B. Rodgers*, with him *T. D. Carnahan*, for appellee, cited: Hepburn v. Philadelphia, 149 Pa. 335; Smart v. Philadelphia, 205 Pa. 329; McManus v. Philadelphia, 201 Pa. 619.

PER CURIAM, January 4, 1904:

These decrees are affirmed on the findings and conclusions of the court below.