MOSS et al. v. CITY OF PITTSBURG.

(Circuit Court, W. D. Pennsylvania. January 15, 1910.)

No. 44.

DEEDS (§ 160*)—CONDITIONS SUBSEQUENT—FORFEITURE FOR BREACH— MUNICIPAL CORPORATION—UNAUTHORIZED ACTS OF OFFICERS.

The city of Pittsburg, which, under the law of Pennsylvania governing cities of the second class (Act March 7, 1901 [P. L. 20]), can make no contract, except in writing, executed as required by the act, and signed by the mayor and the head of the proper department, cannot be deprived of a vested title in real estate by the unauthorized acts of individual officers or employés in permitting a use of the land in violation of a condition subsequent annexed to the grant.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 505–517; Dec. Dig. § 160.*]

Ejectment action by Frank H. Moss and others against the City of Pittsburg. On motion to take off nonsuit. Motion denied.

Asa Leroy Carter, for plaintiffs.

W. B. Rodgers, Lee Beatty, Chas. A. O'Brien, and C. Elmer Bown, for defendant.

ORR, District Judge. This is a motion to take off a judgment of nonsuit. The plaintiffs, who are the heirs of James Adams, deceased, brought this action of ejectment against the city of Pittsburg to recover possession of land known as the "Adams Market." In 1833 James Adams conveyed to a municipal corporation by the corporate name of the "Burgess and Council of the Northern Liberties of Pittsburg" the said land in fee simple, upon a condition subsequent expressed in the deed in the language following:

"Provided always, nevertheless, and it is expressly covenanted and agreed by the said parties of the second part, for themselves and their successors, to and with the said parties of the first part, their heirs, executors, and administrators, and it is hereby declared to be one of the express provisions and conditions of this grant, that they, the said parties of the second part and their successors, shall and will hold, occupy, use, possess, and enjoy the said described lots and pieces of ground hereby granted, or intended so to be, with the appurtenances, as a market place, and for the purposes of a public market for the use of the citizens of the borough aforesaid, and the same is hereby appropriated solely and exclusively for that, for that purpose, and for no other purpose whatever, provided that the said parties of the second part are hereby provided to dig and excavate cellars under and for the use of stalls in the said market, and build, put up, and erect over part of the market house hereinafter mentioned to be built and erected on the said lots aforesaid a suitable and convenient council chamber for the meeting and use of the burgess and council aforesaid, and for no other purpose whatever, the said chamber to be constructed so as not to obstruct the free use and enjoyment of the market place aforesaid; and it is hereby covenanted and agreed by the said parties of the second part, for themselves and their successors, to and with the said parties of the first part, their heirs, executors, and administrators, and it is hereby expressly declared to be a further provision and condition of this grant, that the said parties of the second part will and shall immediately build and erect a suitable and convenient market house on the lots aforesaid to be used as a public market house as aforesaid, and that they, the said parties of the second part, or their successors, shall and will not bargain, sell,

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

convey, lease, dispose of, or appropriate any of the said described lots. hereby granted, or any part thereof, to or for any other purpose than that of a public market and the purposes specified as aforesaid; and it is hereby covenanted and agreed, and it is hereby expressly declared to be another condition of this grant, that if the said parties of the second part, or their successors, shall at any time hereafter bargain, sell, convey, lease, dispose of, or appropriate the said described lots hereby granted, or any part thereof, or the buildings thereon erected or intended so to be, to any person whatsoever, or for any other purpose other than that specified as aforesaid, then and in such event this indenture and the estate hereby granted shall cease and become null, void, and of no effect, and the said estate and lots and pieces of ground hereby granted, with the appurtenances, shall instantly revert to the donor and his heirs."

The borough of Northern Liberties was consolidated with the city of Pittsburg by an act of the General Assembly of Pennsylvania approved April 1, 1837 (P. L. 1836–37, p. 136, § 12). Plaintiffs allege a breach of the condition in said deed, in that in the year 1907 the city appropriated a part of said land for the erection and use of swings and other structures for children to play in and upon, as well as divers other playground devices.

Various offers of evidence were made by plaintiffs' counsel to show that the property was in possession of the Pittsburg Playground Association (a corporation) by the permission of the municipality, which offers, however, were confined to parol proof of knowledge by the mayor and members of the councils of the city of Pittsburg of such possession. Objections to all of such offers were sustained, because it was not proposed to prove that the Playground Association was in such possession in pursuance of corporate action by the municipality. The court at the time was clearly of the opinion that the municipality could not be deprived of a vested title in real estate by the nonfeasance of individual officers or employés of the city with respect to a condition subsequent annexed to the land. This opinion of the trial judge has not been changed.

The evidence discloses that the city of Pittsburg is a municipal corporation of the second class. It is therefore governed under the Pennsylvania act of March 7, 1901 (P. L. 20), entitled "An act for the government of cities of the second class," and the .supplements and amendments thereto. Article 1, § 1, of said act, vests the executive power in the city recorder (whose title was subsequently changed to that of mayor) and the heads of the departments created by that act. Article 14, § 1 (P. L. 35), as amended by the act of June 20, 1901 (P. L. 591), vests the legislative power in councils.

No contract or lease can be set up as against the city until there is an ordinance authorizing the execution of such a contract, and such a contract must be in writing and comply with the provisions of article 15, § 1, pars. 2, 3 (P. L. 37), which provide that all contracts shall be in writing, signed and executed in the name of the city by the city recorder and head of the proper department. No contract shall be entered into or executed directly by the councils, or any committee thereof. Under this act the decisions of Pennsylvania hold that no contract can exist with the city of Pittsburg, unless the same is in writing and is executed in accordance with the provisions of said act. See Press Publishing Co. v. Pittsburg, 207 Pa. 623, 57 Atl. 75; Smart v. Philadelphia, 205 Pa. 329, 54 Atl. 1025. And many other cases could be

cited. It appears that the requirements as to the formal execution of said contracts are mandatory.

There was no offer in this case to prove any lease or contract in writing, executed by the mayor and the director of any department, and countersigned by the comptroller, as required by said act. Plaintiffs, therefore, cannot claim that any such contract exists. The rights of the city of Pittsburg should not be prejudiced by alleged unauthorized acts of employés whose duties are purely ministerial and administrative.

The motion to take off the nonsuit must be refused.