## Taylor, Appellant, *v.* Middle Coal Field Poor District.

*Poor law—Powers of poor district—Erection of new buildings—Special Act of March 25, 1862, P. L. 178.*

1. The Middle Coal Field Poor District embracing portions of the counties of Carbon and Luzerne, and incorporated by the special Act of March 25, 1862, P. L. 178, with powers designated by reference to the Act of April 26, 1855, P. L. 294, and its supplement of April 3, 1860, P. L. 619, has no power to enter into a contract, without the approval of the courts of Carbon county, to pay an architect two per cent on a very large sum of money for his services in superintending the erection of a proposed new building which was to cost the sum upon which the architect's commission was to be paid.

2. In such a case the power claimed by the corporation must be found clearly written within its charter, either in express words, or by absolutely necessary implication so that without the exercise of such power it would be impossible for the corporation to fairly exercise other powers distinctly and expressly conferred.

Argued Dec. 12, 1911.  Appeal, No. 216, Oct. T., 1911, by plaintiff, from judgment of C. P. Carbon Co., April T., 1911, No. 13, for defendant on case stated in suit of R. W. Taylor, trading as Luzerne Engineering Company, v. Middle Coal Field Poor District.  Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ.  Affirmed.

Case stated to determine liability on a contract.

From the case stated it appeared that by written agreement between the parties, dated August 31, 1910, the plaintiff agreed to prepare plans and specifications for an asylum for the insane, proposed to be erected by the defendant, and to supervise and superintend the work during the construction thereof.

The plaintiff was to receive five per centum upon the aggregate cost of the asylum (placed at $192,000) as his compensation, proportioned three per centum for making the plans and specifications, and two per centum for supervising the work.  The three per centum of the consideration was to be paid, one and one-half per centum when the plans and specifications were accepted, and one and one-half per centum when the contract for the erection of said asylum was awarded.

The plaintiff prepared plans and specifications for an asylum building which were accepted by the defendant, and $1,500 paid on account of the first payment; $1,380 of said first payment remaining unpaid for which this suit is brought.

On August 17, 1910, the directors of the Middle Coal Field Poor District filed their petition in court setting forth: the organization of said district; the rights and powers of said directors; the action of said directors to-

wards the erection of said proposed hospital including the location, the estimated cost, and detailed plans and specifications, stating the plans and specifications had been approved by the committee on lunacy of the board of public charities; the provision for the payment of said building; the assessed valuation of the district; and praying the court for its approbation.

Objections were filed, testimony was taken, and on January 9, 1911, the court filed an opinion in which it held that there was no authority in law which gives to the directors of the Middle Coal Field Poor District the right and the power to build the proposed hospital, and consequently its approval was withheld.

The court in an opinion by HEYDT, P. J., entered judgment for defendant on case stated.

*Error assigned* was the judgment of the court.

*Abner Smith*, for appellant, cited: Light v. Houck, 2 W. N. C. 5.

*W. G. Thomas*, for appellee.—The contract was invalid: Com. v. Moir, 199 Pa. 534; Light v. Houck, 2 W. N. C. 5.

All persons contracting with a municipal corporation must at their peril inquire into the power of the corporation or of its officers to make the contract, and a contract beyond the scope of the corporate power is void: O'Malley v. Olyphant Boro., 198 Pa. 525; Gibson v. Poor District, 22 W. N. C. 512; Wimer v. Worth Twp., 104 Pa. 317.

OPINION BY HEAD, J., July 18, 1912:

The learned judge of the common pleas, in his opinion filed, has cited and considered the several acts of assembly, in the provisions of which must be found, if it exists at all, the power of the defendant corporation to enter into the contract which gives rise to this controversy. These several acts belong to a series of statutes, enacted through a period of years, all of which had a common object in

view.   The general legislative intent, evidenced by them, was the creation of corporations for the purpose, within their respective counties, of conducting the business theretofore managed by township overseers, to wit, the maintenance and employment of poor and indigent persons.   These statutes closely resemble one another, not only in their salient characteristics, but also in the more particular provisions describing in detail the manner in which their operations were to be conducted.   In each case particular provision is made for the acquisition of the necessary land and the purchase or construction of suitable buildings.   That accomplished, the legislature appears to have contented itself with specifying the manner in which the corporations should conduct the business for which they were created.   In the earlier acts these corporations were not usually invested with the taxing power, but obtained their revenues from the county commissioners who were required to provide such funds as would be needed according to estimates annually made by the directors, in due time to provide for them in the county levies.   Later on the legislature appears to have found it more expedient to adopt the policy of permitting the directors to levy their own taxes, upon duplicates turned over to them by the commissioners after the assessments for the county levies had been regularly made.

The defendant corporation was created by the Act of March 25, 1862, P. L. 178.   The corporation thus created was somewhat anomalous, in the single respect, that the territory within which it was to exercise its functions was not marked by county lines but embraced portions of the counties of Carbon and Luzerne.   Provision is made in the statute for the acquisition by this corporation of the necessary buildings which had formerly belonged to the directors of the poor of Carbon county.   The proper courts of Carbon county were authorized to exercise, over the affairs of this inter-county district, the same supervision usually provided to be exercised over the affairs of directors of the poor generally by the courts of their re-

spective counties.   In a general way the powers of the
defendant corporation were designated by a reference to
and adoption of the Act of April 26, 1855, P. L. 294, and
its supplement of April 3, 1860, P. L. 619, which acts had
created and defined the powers of the corporate body to
manage the affairs of the poor district known as Carbon
county.   Neither in the act of 1862 nor in those last
mentioned, which must be read as part of it, is there any
express grant of power to the defendant corporation to
enter into a contract for the erection of new buildings, in
addition to those acquired under the specific provisions
of the act.

The broad legislative intent on this subject may be as-
certained by a reference to the general Act of April 17,
1866, P. L. 110, entitled, "An Act relating to Poor Houses
and Lands."  This act provides, "That in all cases where
a poor house, or houses, have been, or hereafter shall be,
erected in any county, or counties, under any law of this
commonwealth, and the said buildings are found insuffi-
cient for the purpose of comfortably sheltering and main-
taining the poor, sick, or insane, of the proper county, it
shall be lawful for the county commissioners to erect new,
or additional, buildings, for such purpose, &c.: Provided.
That before erecting any such new, or additional, buildings,
the construction thereof shall be recommended by the
directors of the poor, a grand jury, and the court of quarter
sessions of the proper county."   Were the defendant
corporation the ordinary one, whose functions were to be
exercised within the limits of a county, it would be clear
that by this general act the legislature had pointed out
the manner in which new and additional buildings for
the support and maintenance of the poor of the county
were to be provided.   The method thus outlined is in
harmony with the general policy of the state in relation
to county public buildings to be paid for by taxation.

But, it may be said, that because of the fact already
adverted to, the district within which the present de-
fendant must exercise its powers is not confined to one

county but embraces parts of two, the act of 1866 could not reasonably be held to be controlling. Whilst there is force in this argument, it does not necessarily follow that the defendant corporation must have the power to determine for itself, without the approval of the courts of Carbon county, or without the consent and recommendation of the commissioners or grand juries of either Carbon or Luzerne county what new buildings it will erect and how much of the taxpayers' money it may expend for that purpose.

In considering the question whether or not the power here claimed exists by implication only, it is to be remembered that the general fundamental principle requires a strict construction of such grants by the legislature. The power claimed by the corporation must be found clearly written within its charter, either in express words or by absolutely necessary implication, so that without the exercise of such power it would be impossible for the corporation to fairly exercise other powers distinctly and expressly conferred. We are further to observe that the Supreme Court, in construing one of this series of acts, to wit, the Act of March 16, 1830, P. L. 105, declared, in Light et al. v. Houck et al., 2 W. N. C. 5, that the corporation, created by that act and invested with practically similar powers in this respect, to those conferred upon the present defendant, had no authority to rebuild one of the buildings, originally acquired, after its destruction by fire. These considerations lead us to the conclusion, reached by the learned judge of the court below, that the defendant corporation had no power, without the approval of the court, to enter into a contract for the erection of new buildings involving the expenditure of nearly $200,000 of the public money.

The defendant corporation itself does not claim, as we understand it, that it had such power because it submitted the plans for the proposed building to the court for its approval which was denied. The contract which we are considering was one made by it with an architect to

prepare plans and to pay him therefor at the rate of two per cent of the cost of the proposed building. The statute provides that the directors of the defendant corporation may adopt ordinances and standing rules regulating the expenditure of their revenues along ordinary lines, but even these, before becoming effective, must be approved by the court. We do not mean to say that, without the adoption of such ordinances or standing rules so approved, the directors may not lawfully expend some of their revenues on such special occasions, or for such special emergencies as would not likely arise more than once, and hence could scarcely be the proper subject of a standing rule or ordinance: Warner v. Poor Directors, 38 Pa. Superior Ct. 437. From this it may be argued that, even if we conceded that the directors of the defendant corporation required the approval of the court of Carbon county, before they could lawfully execute a contract for the erection of new public buildings, it was necessary for them to expend some money in the preparation of such preliminary plans as would be necessary to inform the court of the nature, character and extent of the proposed buildings and the probable cost thereof, to the end that the court could intelligently exercise its power of approving or disapproving the proposed contract. Even if this be conceded, we cannot resist the conclusion that the expenditure of $1,500, already paid to the present plaintiff for that purpose, would have been ample to provide for such preliminary plans as would be necessary to enable the court to perform its function. The plans contracted for in the present case seem to have been those adequate for the construction and completion of the proposed building and reasonably necessary only in the event that its erection should be duly authorized.

The conclusion reached by the learned judge below and adopted by us appears to be in line with the uniform legislative policy expressed not only by the general mass of legislation referred to, but clearly declared as to the affairs of this particular district, by the recent Act of

June 9, 1911, P. L. 731, applicable to the Middle Coal Field Poor District. The fourth section of that act provides, "In the event of its becoming necessary to erect additional buildings for the reception and care of the poor and insane of the said district, it shall be lawful for the directors to erect such new or additional buildings, but only after their erection, cost and construction have been approved by the court of Quarter Sessions of Carbon County."

Judgment affirmed.