# Rieger, Appellant, *v.* Pittsburg.

*Municipalities—Cities of the second class—Municipal contracts— Contract not in writing—Architect—Acts of March 7, 1901, P. L. 20, and June 20, 1901, P. L. 586.*

1. In an action by an architect against a city of the second class to recover compensation for preparing two sets of plans and specifications for a fire house, the plaintiff is not entitled to recover, where it appears that the bids on both plans were rejected because they exceeded the amount of the appropriation; that the plaintiff had no written contract whatever with the city, that there was no ordinance authorizing his employment or appropriating money for his services; and that the only agreement which he had was an oral one with the director of the department of public safety.

2. In such a case the mere fact that the director made use of the plans and specifications to receive bids thereon, did not constitute a ratification by the city of the oral agreement between the director and the architect.

3. The contracts referred to in art. 15 of the Act of March 7, 1901, P. L. 20, are not confined only to such as are the subject of competitive bidding.

Argued May 1, 1913. Appeal, No. 140, April T., 1913, by plaintiff, from order of C. P. Allegheny Co., Third Term, 1909, No. 671, refusing to take off nonsuit in case of Charles J. Rieger v. City of Pittsburg. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD and PORTER, JJ. Affirmed.

Assumpsit for services. Before FRAZER, P. J.

The facts are stated in the opinion of the Superior Court.

*Error assigned* was refusal to take off nonsuit.

*T. F. Garrahan*, with him *J. A. Langfitt* and *H. W. McIntosh*, for appellant.—The employment of the plaintiff was not required by the act to be in writing: Carling v. Jersey City, 58 Atl. Repr. 395; Com. v. Bacon, 6 S. & R. 322; Horgan v. N. Y., 114 N. Y. App. Div. 555; Gleason v. Dalton, 51 N. Y. Supp. 337; Koontz v. Franklin County, 76 Pa. 154.

In construing a portion of an act, the whole must be read together: Com. v. Montrose Boro., 52 Pa. 391; Small v. Small, 129 Pa. 366; Hertzog v. Hertzog, 29 Pa. 465.

The requirement that all contracts shall be in writing and signed in the name of the city by the mayor and head of the proper department must be limited to executory contracts, and can have no application to contracts which have been completely executed on one side: Beers v. Dalles, 18 Pac. Repr. 835; Drainage Com. v. Lewis, 101 Ill. App. 150; Rogers v. Omaha, 107 N. W. Repr.

214; Cincinnati v. Cameron, 33 Ohio, 336; Salomon v. U. S., 86 U. S. 17; Allegheny v. McClurkan, 14 Pa. 81; Philadelphia v. Gorgas, 180 Pa. 296; Silsy Mfg. Co. v. Allentown, 153 Pa. 319.

*Harry Diamond*, with him *Charles A. O'Brien*, for appellee.—All persons contracting with a municipal corporation must at their peril inquire into the power of the corporation or of its officers to make the contract; and a contract beyond the scope of the corporation's power is void although it be under the seal of the corporation: O'Malley v. Olyphant Boro., 198 Pa. 525; Brobst v. Reading, 236 Pa. 627; Ephrata Water Co. v. Ephrata Boro., 16 Pa. Superior Ct. 484; O'Rourke v. Philadelphia, 211 Pa. 79; McManus v. Philadelphia, 201 Pa. 619; Smart v. Philadelphia, 205 Pa. 329; Press Pub. Co. v. Pittsburg, 207 Pa. 623.

OPINION BY MORRISON, J., July 16, 1913:

An ordinance was adopted by councils of the city of Pittsburg, and approved by the mayor on May 19, 1908, directing: "That the Mayor and Director of the Department of Public Safety, shall be and they are hereby authorized, empowered and directed, to advertise for proposals and award a contract or contracts, for the erection of an engine house in the Forty-Third ward, of the city of Pittsburg, and enter into a contract or contracts with the successful bidder or bidders for the same in accordance with the act of assembly entitled, 'An Act for the government of cities of the second class,' approved March 7, A. D. 1901, and the several supplements and amendments thereto and the ordinances of councils in such cases made and provided, the cost of which shall not exceed the sum of $15,000, and shall be paid from appropriation No. 000, the proceeds arising from the sale of bonds known as the Fire and Police Bond Issue of 1909."

It appears that the appellant applied to the Director of the Department of Public Safety for an opportunity to

design and superintend the construction of said engine house, and that for his plans and superintendence of the construction of the building he was to receive five per cent on the cost of the building. He made drawings, sketches and specifications which he claims were accepted by the director and bids were advertised for but the lowest bid was $17,128.50. This bid was irregular and incomplete, as was claimed, and it could not be accepted because it did not come within the $15,000 appropriation. The plaintiff then drew new plans and the lowest bid made upon them was $14,651, and this bid was claimed to be incomplete and with the plaintiff's five per cent exceeded the appropriation. After the two trials by the plaintiff there was a failure to procure the building of the engine house within the amount of the appropriation and the defendant refused to pay the plaintiff for drawing the two sets of plans and specifications and he brought this present suit claiming to recover the sum of $1,135.35. At the trial there was no ordinance or other authority offered in evidence providing for the employment of an architect to draw plans and specifications such as appellant claims was done by him. There was no contract in writing offered in evidence between plaintiff and the city of Pittsburg. There was no evidence that appellant dealt with anybody connected with the city of Pittsburg other than the Director of the Department of Public Safety. The plaintiff having failed to show that there was any ordinance authorizing his employment or that his plans and specifications enabled the city to secure bids within the terms of the ordinance providing for the contract for the engine house, or that he had any contract in writing with the city for his services, the city refused to acknowledge his claim. The court entered a compulsory nonsuit, and upon refusal to take the same off this appeal was taken.

The Act of March 7, 1901, P. L. 20, in art. XV, under contracts, contains the following (p. 37): "All contracts shall be in writing, signed and executed in the name of the city by the city recorder (now mayor) and head of the

proper department.   No contracts shall be entered into
or executed directly by the counsels or any committee
thereof.

"All contracts shall be counter-signed by the controller,
and filed and registered by number, date and contents in
the city recorder's office, and attested copies furnished to
the controller and the department charged with the work."

Appellant's learned counsel, in their printed argument,
attach importance to sec. 3, art. 12, of the act of March 7,
1901, and contend that the employment of an architect is
authorized by said section as the employment of "pro-
fessional experts."   But the learned counsel evidently
overlooked the Act of June 20, 1901, P. L. 586 (see p. 591)
where said section is fully quoted for amendment and is
supplied by the following: "In case of any removals, as
provided for in the preceding section, the Director, or
head of the department, shall appoint a successor, but all
such appointments shall be made by reason of the fitness
of the appointee and not for political purposes."   The
above-quoted language is all that remains of sec. 3, art. 12,
of the act of March 7, 1901, and, therefore, counsel's
argument to the effect that professional experts could be
appointed or employed without a written contract seems
to be without force.

The plaintiff's action is assumpsit and to recover he
must show a contract between himself and the city, and
the act of March 7, 1901, expressly provides that all con-
tracts shall be countersigned by the controller and filed
and registered by number, date and contents in the city
recorder's office, and attested copies furnished to the con-
troller and the department charged with the work.   The
act further provides: "In each and every instance where a
contract is let to any person by any city of the second
class, or any officer, or department of such city for any
work of any kind, the person shall give bond to the city
to the amount of fifty per cent of the estimated cost with
security to be approved by the city recorder, and further
the act requires that every contract involving an appro-

priation of money shall designate the item of appropriation on which it is founded, and shall be numbered by the controller in the order of its date and charged as numbered against such item and so certified by him, before it shall take effect as a contract, and shall not be payable out of any other fund.

If this act of assembly is to be given the force and effect which the legislature evidently intended, and the appellant having failed to prove any one of the above requirements, it would seem that the court below was right in holding that the plaintiff failed to make a case. It is argued by appellant's learned counsel that the Mayor or Director of Public Safety had implied power to employ competent persons to do the professional work preparatory to awarding the contract for the engine house; that the employment of an architect was reasonably embraced in the authority given to the mayor and director. Considering the act of assembly and its specific requirements we are not convinced that there are any such implied powers in a municipal corporation or its officers. The act defines the powers of the city officers and it must be obligatory upon persons doing business with them to know the power of the corporation or its officers to make a contract: O'Malley v. Olyphant Borough, 198 Pa. 525; Brobst v. Reading, 236 Pa. 627.

The act of assembly of March 7, 1901, provides that no contract shall be let until councils have first passed an ordinance providing for the letting of the same. Plaintiff knew or was bound to know this before he entered upon such important and expensive work under an oral agreement with the Director of Public Safety. The ordinance from which we have quoted contains nothing providing for the employment of an architect or the making of a contract with an architect to draw plans and specifications for an engine house. But if the ordinance did so provide, the plaintiff was bound to know that he must have a contract in writing signed by the proper officers. It was the plaintiff's duty to ascertain that there was a preliminary

ordinance authorizing his employment.  Plaintiff contends that his services were accepted by the Director of Public Safety in receiving bids upon the plans and specifications, and that this constitutes a ratification by the city of Pittsburg of the alleged verbal contract between the director and the plaintiff.  We do not find in the record that there was any legal acceptance of his services by the city.  In this connection we remark that plaintiff's services could not become valuable until he submitted plans upon which bids were made coming within the amount of the appropriation.  It can hardly be said that the director alone could ratify the contract, if there was one, so as to bind the city.  If the head of a department could, by his personal conduct and words, ratify a void contract originally made by him, the purpose of the act of assembly under consideration, which requires that all contracts shall be in writing, would be defeated.

In Ephrata Water Co. v. Ephrata Borough, 16 Pa. Superior Ct. 484, in an opinion by RICE, P. J., we said: "As a general rule, where its charter or the general law prescribes the mode in which a municipal corporation may contract, it must be shown that the contract or obligation sought to be enforced was made or incurred in the mode thus prescribed."  In O'Rourke v. Phila., 211 Pa. 79, the Supreme Court, in an opinion by Mr. Justice MESTREZAT, said: "We have time and again held, and it is therefore settled, that a strict adherence to the provisions of the act of June 1, 1885, P. L. 37, requiring contracts with the city to be in writing will be enforced, and that he who asserts and attempts to enforce any agreement or liability against the city must produce a duly executed contract in writing, signed by an officer authorized to make the same: Smart v. Philadelphia, 205 Pa. 329."  In O'Rourke v. Philadelphia it was further stated in the opinion of the Supreme Court: "But before any person can sustain a claim against the city for compensation for the work he must, as we have seen, show that it is due him by a contract in writing, signed by the proper city officer.  Until the plaintiff pre-

sents a demand showing a liability on the part of the city imposed by a written contract; he cannot enforce payment of his claim against money appropriated by the ordinance in question to the department of public works. If councils may by an ordinance of this character impose a liability on the city for claims for grading streets and constructing sewers and drains without a contract executed in accordance with the act of 1885, the statute is rendered nugatory and its purpose, the protection of the city, is completely frustrated."

In Hepburn v. Philadelphia, 149 Pa. 335, there was a provision in an act of assembly requiring all city contracts to be in writing and the Supreme Court, speaking through Mr. Justice STERRETT, said: "These clear and explicit requirements of the city's organic law are not merely directory. On principle, as well as authority, they are mandatory. To hold otherwise would defeat the very object the legislature had in view in thus specifically prescribing the manner in which all contracts relating to city affairs shall be executed, and expose the public funds to raids of every conceivable form. When the mode in which contracts by corporations shall be made and evidenced 'is specially and plainly prescribed and limited, that mode is exclusive and must be pursued:' Dillon on Mun. Corp., 4th ed. sec. 449. Moreover, our act of March 21, 1806, declares that, 'in all cases where a remedy is provided or duty enjoined, or anything directed to be done by any act or acts of assembly . . . . the directions of the said acts shall be strictly pursued.' " See also Smart v. Philadelphia, 205 Pa. 329.

In McManus v. Philadelphia, 201 Pa. 619, the Supreme Court in holding that the city could only be held liable on a written contract where such contract is required by law, said: "The reason why the same code does not apply in the case of a municipality is, that it is not the law. The very reason too, of the law is, that municipal corporations should not be made answerable for money, on sentiment, but only for contract liability under the law. A strict

adherence to this rule is the only protection which such corporations can invoke." See also Press Publishing Co. v. Pittsburg, 207 Pa. 623. In Smith v. Philadelphia, 227 Pa. 423, the Supreme Court held as stated in the syllabus: "Where neither a city nor its officers are legally authorized to enter into a contract, any attempted ratification of their action in making such a contract is of no validity."

We have given the argument of appellant's learned counsel, and the authorities therein cited, careful consideration and we are not convinced that without a written contract the plaintiff had a valid claim against the city of Pittsburg. The only possible question that can be raised under the authorities is based upon the idea that the plaintiff's claim was not strictly speaking a contract. This idea seems to have been rather a late discovery because the plaintiff's declaration explicitly states that on or about June 1, 1908, the defendant, city of Pittsburg, having in contemplation the erection and construction of a fire engine house . . . . by its officers and agents duly authorized, entered into a contract with the plaintiff, for the drawing of the plans, specifications, details, superintendence of construction of said building, etc. Then in the next paragraph the declaration states "pursuant to said contract, the plaintiff undertook said work, etc. So we see that the plaintiff's learned counsel who prepared the declaration deemed it necessary to state that the city entered into a contract with the plaintiff.

It is also contended by appellant's learned counsel that the contracts referred to by art. XV of the act of 1901 are only such as are the subject of competitive bidding. We do not agree with this construction of the act. If it had been the legislative intent to except any class of contracts from the requirement that they must be in writing, it would have been easy and natural to have specified such contracts. But we find nothing of that kind in the act. The provision that all contracts shall be in writing, signed and executed in the name of the city by the city recorder (mayor) and head of the proper department is in a para-

graph by itself and our conclusion is that it means just what it says and embraces all contracts.

Appellant's counsel cite Com. v. Bacon, 6 S. & R. 322, and quote: "These services rendered by public officers do not, in this particular, partake of the nature of contracts, nor have they the remotest affinity thereto." We do not think that case is in point upon the question we are considering. Koontz v. Franklin County, 76 Pa. 154, is also cited, but we do not think it bears upon the question before us. A large number of the cases relied upon by appellant's counsel are from other states and we cannot give them weight against the decisions of our own Supreme Court.

The only valid assignment of error relates to the refusal of the court below to take off the judgment of compulsory nonsuit. This assignment is dismissed and the judgment is affirmed at the costs of appellant.