# Thayer et al. v. Lawrence County

*Braham, Cobau & Berry* and *Lockhart & Long,* for plaintiffs.

*William McElwee, Jr.,* county solicitor, and *J. W. Rhodes,* for defendant.

BROWNSON, P. J., and HUGHES, J., twenty-seventh judicial district, sitting under special assignment, De-

cember 7, 1936.—The County Commissioners of Lawrence County, having adopted a resolution setting forth their opinion that a necessity existed for the erection of a new courthouse, jail and sheriff's residence, and the acquisition of ground therefor, and their determination to build the same, subject to the approval of the court, employed plaintiffs to serve as architects in connection with this project, and entered into a written contract of employment with them, which contract was approved by the court of quarter sessions. Under this contract plaintiffs proceeded to do work and to render service until the summer of the year 1934. On August 24, 1934, they were notified by the commissioners not to do any more work. It is stated in an exhibit annexed to the statement of claim that they in fact did no work after July 19, 1934, the date of an order, mentioned later herein, by which the judges refused to approve a site for the proposed buildings. They have brought this action to recover compensation for the work done by them, together with certain expenses, and also damages for not being permitted to complete the work they were employed to do. The case was partly tried in April 1935, but, plaintiffs having moved in the course of the trial for leave to amend the statement of claim, and this leave having been granted, defendant in effect pleaded surprise and asked for a continuance, and a continuance was ordered. On July 10, 1935, an amended statement of claim was filed, and the case now comes before the court upon an affidavit of defense in lieu of demurrer, or, as it is commonly called, a statutory demurrer, to this amended statement of claim.

I

The motion to amend, which was made at the partial trial of the case, held on April 22 and 23, 1935, was for the purpose of bringing into the statement of claim averments of the facts which it would be necessary to have, as a part of the pleadings, in order to serve as the basis for a recovery on a quantum meruit, should the court finally

decide, in accordance with the views that had been expressed tentatively by the trial judge, that plaintiffs are not entitled to a verdict for the measure of damages claimed in the original statement of claim, but would be entitled to recover on a quantum meruit for preparing the plans which, under the statute, were required to be submitted for approval to the judges of the court of common pleas. The trial judge, on April 23d, granted leave to make such an amendment, the general nature of which was set forth on the stenographer's trial record. Plaintiffs' counsel then requested time to prepare, deliberately and in a careful manner, a formal amendment for filing, and suggested a continuance of the trial for this purpose; and defendant's counsel, announcing that they were not prepared to defend against a claim such as the proposed amendment would bring into the case, moved for a continuance. The trial judge, in connection with the grant of the general continuance, previously mentioned, directed that plaintiffs file later a formal amendment such as that for which leave had been given. The amended statement of claim, filed on July 10, 1935, is now objected to, in paragraphs 1 and 2 of the statutory demurrer, upon the grounds that it is not in accordance with the order of April 23rd and standing rule 195 of this court, in that it goes far beyond what was embraced in the leave granted, and that the filing of an amended statement having the form, nature and scope of this one has never been authorized and approved by the court. This objection seems to us to be the proper subject of a motion to strike off rather than a statutory demurrer. Indeed, the filing of a statutory demurrer embracing, as this one does, the subsequent paragraphs whereby an issue of law is raised, as to whether the averments of this amended statement exhibit a case entitling plaintiffs to recover anything, appears to us to be a recognition of this statement as constituting a part of the pleadings and as being properly of record. But, in any event, as we are disposed to give to plaintiffs a full opportunity to state their claim in the way in which they

desire to have it stated, we think that, if the leave to amend heretofore granted is not broad enough to cover everything embraced in the pleading filed on July 10, 1935, we may now broaden that leave nunc pro tunc. The court has power to ratify anything which it could have precedently authorized, and we now approve nunc pro tunc the filing of this amended statement of claim, and dismiss the objections thereto made in paragraphs 1 and 2 of the statutory demurrer.

## II

Paragraphs 3, 4, 5, and 8 of the statutory demurrer all have relation to and are connected with the position, taken by defendant's counsel, that the contract of employment by which the county commissioners engaged the services of plaintiffs was ultra vires and therefore is unenforcible. This position is grounded upon the claim that statutory provisions have made certain preliminary steps or proceedings conditions precedent of the authority of the commissioners to contract for the rendering of such services, and that the amended statement of claim does not aver that such necessary preliminary steps were taken.

Formerly, it was required, in order that the county commissioners might be authorized to erect buildings, that the project be approved by two grand juries and the court of quarter sessions: Act of April 15, 1834, P. L. 537; that any acquisition of ground therefor be approved by two grand juries, and that the specific purchases be approved by the judges of the court of common pleas: Act of June 1, 1883, P. L. 58, as amended by the Acts of June 19, 1911, P. L. 1039, and April 21, 1921, P. L. 271; and that approval of the plans and specifications for the buildings, and of construction contracts let thereon, be given by the judges of the common pleas: Act of April 19, 1895, P. L. 38. The regulations embodied in these statutes were superseded by The General County Law of May 2, 1929, P. L. 1278, which contains the following provisions relating to the subject now in hand:

"When it appears to the county commissioners that the necessities of the county require ground, at the county seat, for the purpose of the erection or extension of such building or buildings as may be necessary for the accommodation of the courts, and of the several officers of the county, and for the reception and safe-keeping of the records and other papers in charge of such officers, and also ground at or near the county seat for the purpose of the erection or extension of such other building or buildings as may be necessary and proper for the purposes of a county jail or workhouse, or any or either of them, they may purchase ground for such purposes, and cause to be erected thereon the necessary buildings for which said ground was purchased, subject to the approval of the court of quarter sessions." (Then follows a provision for the acquisition of the ground by condemnation, if necessary) : sec. 566.

"Whenever the board of commissioners are authorized and required to erect a court house, jail or other county building, they shall submit the plans and specifications adopted by them to the judges of the court of common pleas for their approval, and, when it is obtained, they shall let the work by contract to the lowest and best bidder, after three weeks' public notice in two newspapers published in the county, which contract or contracts shall be made subject to the approval of the said judges": sec. 561.

Defendant takes the position that section 566 makes it a condition precedent of the authority of the commissioners to enter into any contracts whatever that there shall be a determination, by a formal resolution of the board, specifically approved by the court of quarter sessions, of the necessity for the proposed new buildings and the acquisition of ground therefor. Plaintiffs claim that this section should be construed in a different way; that the board of county commissioners is the only body to pass upon and determine this question of necessity; that the court of quarter sessions neither is required, nor has any

jurisdiction, formally to approve or disapprove the decision of that question by the commissioners; and that the requirement of "the approval of the court of quarter sessions" relates and applies only to the steps and actions taken, after the board has decided that such necessity exists, for the purpose of carrying out and giving effect to such decision.

Our interpretation of the above-quoted portion of section 566, which consists of a single sentence, is that the grant of powers which in that sentence is made to the county commissioners is, both generally and in all particulars, both as a whole and in all its parts, intended to be subject to, and to become operative upon, the condition that the court of quarter sessions shall approve the possession and exercise by them of the powers so granted: in other words, that the court must approve the general building project as one that is justified by the needs of the county, as well as the particular things which constitute parts thereof. And we agree with defendant's counsel in the view that such approval is to be given, not orally, in informal conferences, but by an order that is entered of record.

But the statute does not prescribe any particular form of words for such an approval. Any form of order, duly entered of record, the legal import and meaning of which is that the court approves or adopts the finding by the commissioners of the existence of a necessity, will be sufficient.

In this instance, as the statement of claim sets forth, the commissioners presented to the court of quarter sessions a petition which contained averments, in substance, of the following facts: That a necessity existed for the erection of a new court house, jail, and sheriff's residence, and the acquisition of ground for that purpose, the present buildings being inadequate, and that petitioners had, by resolution, officially determined the existence of such necessity; that they proposed to carry out the purpose of erecting new buildings; that, in order properly to do so,

it was necessary to employ an architect; and that they had "employed, subject to the approval of this court, [present plaintiffs], registered architects, . . . to prepare plans, specifications, details, etc. . . . and to supervise the erection and construction of said buildings, if constructed", a copy of the contract of employment being annexed as a part of the petition. Upon this petition there was made, and entered of record, an order of the court, signed by both of its judges, reading as follows:

"Now, November 1, 1933, the within petition presented in open court, and upon due consideration of the facts therein set forth the prayer of petitioners is granted, and the contract entered into by petitioners, as County Com-missioners of Lawrence County, with The Thayer Company, architects, is hereby approved."

Among "the facts set forth" in the petition, "upon due consideration of" which the above order was made, were the averments that there was a necessity for what was proposed to be done and that petitioners had found and determined the existence of such necessity; and what the court was asked to do was to approve the taking of the first step toward the erection of buildings to meet that necessity. The showing, and ascertainment, of a necessity for new buildings was a condition of the right of the county commissioners to take action, and of the court to approve action by them, in the way of doing, at the expense of the county, anything toward the erection of the proposed buildings. Therefore, if the court were not satisfied that a necessity therefor existed, it would be the duty of the judges to refuse the prayer of this petition. Accordingly, the making of the order above quoted amounted in its legal meaning and effect to an adoption by the court, as true and correct, of the averment in the petition that necessity existed, and of the finding officially made by the commissioners of the existence thereof. It is a well-recognized principle and rule that a judgment or order of a court has the meaning of, and operates as, an adjudication of every fact properly averred that forms

an essential part of the basis upon which it must rest: of every fact, properly averred and shown in the record, the existence of which is necessary to support it as a lawful judgment or order. We think this order was in legal effect an approval and adoption of the finding that had been made of the existence of necessity; that the approval of an action taken by the commissioners to follow up and give effect to the resolution amounted to an approval of the resolution.

Afterward, on July 19, 1934, the judges refused to approve either of two sites that had been proposed for the courthouse; and to the order making such refusal Judge Hildebrand appended a memorandum stating that after careful and earnest consideration he was "now convinced that under existing conditions, the County of Lawrence should not incur the indebtedness necessarily incident to the erection of a new courthouse." If this is to be considered as a withdrawal of approval of the project, previously given, we do not think this should affect plaintiffs' right to be compensated for work which they had done in the meantime, because it would not be just and right that any rescission of previous approval should be given such an ex post facto effect as to them.

Counsel for defendant have cited a multitude of authorities in support of the proposition that, when a statute has prescribed something as a condition precedent of the right of a municipality to enter into a contract, such condition must be complied with actually and literally; that there can be no waiver, either expressly or by implication, of such compliance, nor can anything else be substituted therefor. The authorities so cited very fully support the proposition of law advanced.

But it appears to us that these authorities do not rule the present case. It is not like such a case, for example, as Press Publishing Co. v. Pittsburgh, 207 Pa. 623, one of the authorities cited, in which it was held that where a statute authorized the chief executive of a city to award a contract to the highest bidder, but required that the con-

tract be put in writing and signed, actual signing was a prerequisite of the contract's going into effect, and this could not be waived; and that therefore, notwithstanding the fact that the officer, when a written contract, drawn up in pursuance of an award to an accepted bidder, was laid before him, orally expressed approval and stated that he would sign it, which he was prevented by his death from doing, the contract never went into operation. But the question here is not one as to whether the doing of something that the law directed to be done could be waived or dispensed with; it is a question of the proper interpretation and meaning of an order which the judges signed, and caused to be entered of record: whether the order of November 1, 1933, had the legal effect of an approval of the precedent actions of the county commissioners as set forth in the petition upon which the order was made. And it appears to us, as already remarked, that approval of the entering into a contract under and in pursuance of a precedent resolution, and as a step toward carrying that resolution into effect, the fact and nature of the resolution being laid before the court, and appearing of record, in connection with the submission of the contract for approval, must be interpreted as, and necessarily had the effect of, an approval of the resolution.

We come now to the next question, in connection with the objection made upon the ground of ultra vires.

Section 561 of The General County Law, supra, requires that the county commissioners, after having been authorized to erect county buildings, shall, before advertising for bids and letting a construction contract, obtain the approval of the judges of the court of common pleas for the plans and specifications which they have adopted. There has been no such approval in this instance, and plans and specifications were never laid for approval before the judges of the common pleas. Indeed, the statement of claim avers that the work of preparing plans and specifications for submission to these judges was not en-

tirely completed at the time when the county commissioners notified plaintiffs to discontinue their work.

In the case of Osterling v. Allegheny County, 272 Pa. 458, it was ruled that, as supervision of construction is a part of the work of erection, the county commissioners cannot bind the county to pay for it until by the proper approvals they have become authorized to proceed with such erection. That approval of plans by the judges of the common pleas was, under the Act of April 19, 1895, supra, which is now incorporated in The General County Law as section 561, an express condition precedent of the right to proceed to erect, was decided in Mahon v. Luzerne County, 197 Pa. 1. An analogous ruling was made, under another statute, in Taylor v. Middle Coal Field Poor Dist., 50 Pa. Superior Ct. 317.

We hold, therefore, that the county commissioners, never having obtained from the judges approval of plans and specifications, had not become invested with authority to let a building contract, and consequently had not yet become invested with the power to bind the county to pay to plaintiffs compensation for supervising the erection of buildings, or to impose on it a liability for damages should plaintiffs not be permitted to do such supervisory work.

But the work of preparing the preliminary plans and specifications, which by section 561 are required to be submitted for approval or disapproval, and which, when approved, will be the basis for the advertising for bids and letting a contract, stands upon a different footing. As the statute specifically provides for their submission, and as obviously the commissioners cannot themselves prepare such plans and specifications, being presumably without the necessary professional knowledge and skill, the direction to submit them for approval imports by necessary implication authority to go to the expense of having them prepared by some one possessing the requisite knowledge and skill and to impose upon the county

the burden of paying a reasonable compensation for the work of such preparation.

In this instance, the county commissioners, by one written contract, employed plaintiffs for both of the purposes above referred to: the preparation of the plans and specifications which were to be submitted for approval, and the preparation of detail working drawings and the supervision of the work of erection after the general plans and specifications would be approved. When they thus embraced the two kinds of service in one contract, the employment, insofar as relating to the work which was to follow the court's approval under section 561, should this be given, was necessarily a tentative employment, contingent upon obtaining such approval and to become operative and binding upon such approval. But insofar as it provided for employment to prepare the plans and specifications which were to be submitted for approval, the commissioners could then make a binding engagement for the payment by the county for the work of such preparation.

These two lines of service were separable undertakings of plaintiffs; as the result of provisions and regulations contained in the statute, they are necessarily separate and distinct pieces of architectural work; and in our opinion plaintiffs are justly entitled to be paid for such work as they have in good faith done in and about the preparation of plans and specifications for submission to the court.

But this contract provided that both of these lines of service should be compensated by the payment, in addition to certain expenses, of one fee, consisting of a commission of six percent of the cost of the buildings, subject to an increase of the rate of compensation in certain contingencies which have not occurred; and it was provided that in the event of a severance of relations with the architects before completion of the work, or of a suspension or abandonment thereof, compensation should be paid to them for their work on the basis of "estimated cost" of

the buildings if the cost should not have been fixed by letting a contract for erection or the receipt of bona fide bids, and such payment should be for a proportionate part of the stipulated fee.

In their suit plaintiffs claimed to be entitled to recover for the work they had done prior to being notified to cease operations, and prior to the order of July 19, 1934, a proportionate part of a six percent commission, figured on what is the estimated cost of the buildings which were designed in the plans and specifications, which they had almost completed, this estimated cost being averred to be $650,000; and also an additional sum as damages for not being permitted to complete all of the services which the contract provided for, such damages being provided for in article V of the contract, plus the amount of certain expenses incurred. In the amended statement of claim, these claims are reiterated, although plaintiffs have introduced the averment that the reasonable value of the services performed in and for the preparation of plans and specifications for submission to the judges is $21,840, on account of which a payment of $7,800 is acknowledged.

A difficulty about claiming a proportionate part of a six percent commission on "estimated cost" is that in this case, as a matter of law, there cannot be such a thing as an estimated cost of buildings which the commissioners were authorized to erect, because there are no approved plans and specifications upon which to make an estimate of cost. The reference to estimated cost in the contract manifestly means, and must necessarily be interpreted as meaning, the estimated cost of a construction to be erected in accordance with plans and specifications approved by the judges of the common pleas, because there would, and could, be no legal authority for any other construction work. If plans and specifications involving an expenditure of $650,000 had been presented to the judges they might have said: "No, we will not approve plans and specifications for a construction so expensive as this; you must very considerably cut down the cost before we

will give our approval to plans, and to proceeding with the erection." Moreover, had this been the result of a submission for approval of the plans which plaintiffs had almost completed, then plaintiffs would, under their employment, have had to revise and alter the plans, involving a considerable amount of additional work, so that it is impossible to say now just what percentage of the entire work required for completing the building project, had it gone forward, the work which plaintiffs actually did would be.

It is therefore impracticable to apply the method which plaintiffs seek to have used in measuring the compensation to which, in our opinion, as above expressed, they are entitled, viz., for the service rendered in and about the preparation of plans and specifications for submission to the judges; that is to say, it is impracticable to estimate that such preparation would constitute a certain proportion of the whole of the architectural work specified in the contract, and then to figure what a like proportion of a six percent commission on $650,000 would amount to in dollars and cents. In our opinion the only measure of compensation for their work of preparing the preliminary plans and specifications that it is practicable to apply is on the basis of a quantum meruit, that is to say, such amount of money as a jury would determine to be fair, reasonable, and just compensation, taking into account the time, labor, and skill employed, and the expenses which had to be incurred, in and for the doing of the work to be compensated, less such amount of money as they have already been paid. And we think that fairness and common honesty require that this be paid to them for the work which the county commissioners had the power to employ and direct them to do, and which, we must at present assume, they have done in good faith and in a proper manner; and that this rule of justice should be applied to the County of Lawrence, notwithstanding the fact that it is a municipal or quasi-municipal corporation. That under circumstances analogous to those of the pres-

ent case there may be a right of recovery on a quantum meruit for preparing the plans that are to be submitted to the court, seems to be recognized, at least by dicta, in Osterling v. Allegheny County, supra, and Taylor v. Middle Coal Field Poor Dist., supra, although in one of these cases any claim of that kind was barred by the statute of limitations, and in the other it was decided that the amount already paid plaintiff had sufficiently compensated him for such work. But insofar as concerns the claim of plaintiffs to recover any more than this, we sustain the statutory demurrer.

### III

What is said above, under the last preceding head, sufficiently covers the objection made in paragraph 7 of the statutory demurrer, to the effect that the written contract of October 25, 1933, is an entire contract, and that there can be no recovery for anything upon a quantum meruit.

### IV

It is objected in paragraph 6 of the statutory demurrer that there is no such averment of "the amount or value" of the service involved in preparing the preliminary plans and specifications for submission as to lay the ground for recovery upon a quantum meruit.

In paragraphs 64 and 65 of the amended statement it is averred that the reasonable value of the services performed by plaintiffs, exclusive of certain expenses which, with their amount, are separately averred, is $21,840, on account of which plaintiffs have been paid $7,800, and that all these services were necessary in order that plans and specifications might be prepared and submitted to the judges of the common pleas.

In our opinion this does amount, in substance, to an averment of the value of the services for which we have held there may be a recovery. If paragraph 6 is intended to mean, also, that such services are not stated with sufficient particularity and detail, an objection of that sort

could be made the basis of a rule for a more specific statement of claim, but would not present a reason for entering judgment for defendant upon a statutory demurrer.

## V

Paragraph 9 of the statutory demurrer objects to the amended statement of claim for duplicity, in that plaintiffs are claiming to be entitled to the $14,040 specified in section 58 of the statement, both under the terms of the contract and also upon a quantum meruit.

We do not regard this as a case of duplicity, but as an instance of pleading, in separate paragraphs, the facts necessary to sustain a recovery on a quantum meruit, should the court determine that plaintiffs are entitled to recover on that basis and according to that measure, but not upon the other basis set forth in the statement.

The common counts, formerly in use, have no place in a statement of claim, and therefore do not have to be answered by affidavit of defense: Penn National Bank v. Kopitzsch Soap Co., 161 Pa. 134; Shunk v. Scheffler, 7 Berks 17; this, because it is required under our present statutory system of pleading that the facts upon which plaintiff bases his claim to recover be stated truly, definitely, and precisely. They must now be stated with as much definiteness and certainty as in a bill of particulars: King et al. v. Brillhart, 271 Pa. 301, 305. But there is nothing in the Practice Act of May 14, 1915, P. L. 483, to interfere with introducing into the statement different counts setting out different causes of action: Tidewater Portland Cement Co. v. Pottash Bros., 275 Fed. 237; and while a single allegation of fact made in an alternative form is not sufficiently definite and specific: Karwan v. Ocadlik, 28 Dist. R. 100; yet, if there be a question as to the true nature of plaintiffs' right of action, as where it may be questioned whether an arbitration award, or a note is valid and enforcible, a count averring, also, as a basis for a recovery, the original contract or original consideration may be added: Breslin v. Elks, 16 Schuyl. 73;

Winters v. Mowrer, Admr., 1 Pa. Superior Ct. 47; Smith's Penna. Practice Act (4th ed.) 177. Here, averments of facts upon which to base a claim to recover on the written contract the compensation therein specified, should the court hold that such a recovery can be had, and averments required to support a claim upon a quantum meruit, should it be held that plaintiffs are entitled to maintain such a claim, are set forth in separate paragraphs, and these respective averments are not mutually contradictory, but are factually consistent with each other. Plaintiffs are, it is true, claiming that the reasonable value of their work is the same sum as the proportionate part of a six percent commission on estimated cost claimed in a preceding part of their statement; but this coincidence raises a question, not of law, but of fact. We are of opinion that the circumstance that plaintiffs have pleaded all the facts in this manner is not a reason for sustaining this statutory demurrer. We think the course followed is of practical benefit, as rendering it possible to have the entire controversy between the parties disposed of in one action.

Whether the work for which plaintiffs are claiming was all necessarily incident to preparing plans and specifications for presentation to the court under section 561, and whether, if so, the services were reasonably worth more than $7,800, and whether, therefore, plaintiffs are entitled to recover anything, will in our opinion be questions for adjudication upon the trial of the case.

## VI

The tenth paragraph of the statutory demurrer objects that the plans, for preparing which plaintiffs seek to recover compensation, are the same plans for which they were paid $7,800, as and for the instalment at that time payable, on account of compensation for services, upon the basis of the written contract, and cannot now be made the foundation of a recovery on either of the alternative bases set out in the amended statement of claim.

The payment of the $7,800 appears by averment con-

tained in paragraph 62 of the amended statement of claim to have been the subject of a mandamus proceeding against the county controller: Thayer et al. v. McCaslin, Controller, 314 Pa. 553. On an examination of the report of that case, it seems clear that there was no adjudication therein that the $7,800 received by plaintiffs was to be compensation in full for all the work necessary to be done for the purpose of getting ready for presentation the plans and specifications required by section 561 of the statute to be submitted to the judges; indeed, the averments of this statement of claim are to the effect that at the time of that payment this work had not been completed. The main controversy that was passed on in that case was as to whether a refusal of the county controller to approve an order of the county commissioners for the payment of money to plaintiffs on account of their work, upon the ground that he (the controller) had not been consulted regarding, and had not assented to, the employment of plaintiffs or any other action relative to the subject matter in connection with which they were employed, showed any legal excuse for not approving the order; and it was ruled that his functions were ministerial, and he was not invested with discretionary power to approve or disapprove the contract of employment; and also there was another question of law passed upon that is not involved in the present case; but none of the questions raised upon this statutory demurrer was raised and adjudicated in that case, unless perhaps it may be said that the court below and the Supreme Court both seem to have assumed and proceeded on the basis that the resolution of the county commissioners declaring the necessity for and resolving to build a courthouse, etc., had received the approval of court.

Our conclusion, upon the whole case, is that this amended statement of claim exhibits a prima facie right on the part of plaintiffs to maintain an action for the recovery, upon a quantum meruit basis, of such reasonable

compensation, if any, as has not already been paid to them, for services which they allege were rendered, prior to July 19, 1934, in and about and for the purpose of preparing for presentation to the judges of the court of common pleas, for approval, such plans and specifications as by section 561 of The General County Law of 1929, supra, the commissioners were required so to submit, any expenses necessarily incurred for the purpose of doing such work to be considered in connection with the determination of what would be such reasonable compensation; and that this is the extent of the right of action exhibited by said statement of claim.

And now, December 7, 1936, after argument by counsel and due consideration, it is ordered, insofar as the statutory demurrer filed herein relates to the right of plaintiffs to recover in this action anything beyond, or other than, compensation upon a quantum meruit basis for work done by them in preparation for a submission of plans and specifications to the judges for approval as provided for in section 561 of The General County Law, taking into consideration the necessary and reasonable expenses thereof, that said statutory demurrer be, and hereby is, sustained, and it is adjudged that no recovery of compensation for work and services can be had herein upon any basis other than such quantum meruit; but to the extent to which the statutory demurrer objects to the recovery by plaintiffs of compensation for work and services such as is described and defined in the last paragraph of the opinion herewith filed, it is overruled. And the objections made in the first and second numbered paragraphs thereof are dismissed.